IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROSEMARY V. MONTOYA,**

        Plaintiff,

vs.                                 Civ. No. 99-731 JP/DJS

**KENNETH S. APFEL,
Commissioner of Social Security,**

        Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION

1. Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing. The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. <u>Williams</u>

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

1

v. Bowen, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.   Plaintiff applied for Social Security Disability Insurance benefits on October 6, 1994, and for Supplemental Security Income benefits on January 10, 1994. Tr. 79, 82. The applications were denied initially and on reconsideration. Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ). The ALJ found that Plaintiff was not disabled. Tr. 23. The Appeals Council denied Plaintiff's request for review. Tr. 3b-3c. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.   Plaintiff alleges a disability since January 6, 1993 due to a seizure disorder. Tr. 79, 82. Plaintiff was born on August 24, 1961. She graduated from high school and has past relevant work as a waitress. Tr. 19.

**Issues**

4.   Plaintiff alleges the ALJ made three errors. Specifically Plaintiff claims that: (1) the ALJ failed to rule on Plaintiff's disability benefits application; (2) the ALJ's reliance on Plaintiff's alleged noncompliance with her medications is not supported by substantial evidence and is contrary to law; and (3) the ALJ's finding that Plaintiff has continued to drive a car and take daily runs is not supported by the evidence, and therefore

2

cannot provide support for a finding regarding Plaintiff's noncredibility.

### The Standard of Review

5.  The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Id. It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld. However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied. Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.  The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work. Once that showing is made, the burden shifts to the Commissioner to show: (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific

types of jobs exist in significant numbers in the economy. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7. To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §404.1520. At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past. At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience. If a determination of disabled or not disabled is found at any step, further inquiry is not required. 20 C.F.R. §404.1520.

8. Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in

4

determining whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary,

5

in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.  A review of the facts demonstrates that substantial evidence does not support the ALJ's decision. Plaintiff has had a seizure disorder since she was eight or nine years old. Tr. 253. An electroencephalograph (EEG) done in 1987 showed "generalized atypical spike and wave discharge." Id. It is "apparent...that the patient does have epilepsy." Id. She was prescribed Depakote which controlled her seizures. Tr. 245. However, this medication caused her liver problems and was "discontinued" in 1990. Tr. 245. The Plaintiff did not have any seizures for two years. On October 28, 1992, Plaintiff became ill following a flu shot and had a "generalized tonic/clonic seizure." Id. Plaintiff's recent EEG in 1992 show "generalized high voltage slow activity with intermingled multiple spikes." Tr. 247. This is "suggestive of an epileptic tendency." Id. Since her seizures have returned, they have not been well controlled. Tr. 179. At times this has been attributed to noncompliance with her medications. Id. One of the significant findings in the ALJ's decision is that she was non-compliant in

6

taking prescribed medication.  Tr. 21.

11.   The regulations allow the Commissioner to deny benefits if the Plaintiff's failure to follow prescribed treatment is unreasonable.   20 C.F.R. Secs. 404.1530, 416.930 (1999).  To determine if a plaintiff's noncompliance is unreasonable, the Commissioner must consider: (1) whether the treatment can be expected to restore the ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and (4) whether the refusal was justifiably refused. Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985).  The ALJ erred in not completing this analysis.

12.   In his decision the ALJ assumes that the Plaintiff would not have had seizures if had she had been taking her medicine properly.   This finding is contrary to law.  The law does not permit ALJs to make medical determinations. Wright v. Shalala, 837 F. Supp. 985 (S.D. Iowa 1993); See also Cruz v. Dept. of Health and Human Services, 586 F. Supp. 61, 62 (D.P.R. 1984)("Administrate Law Judges are not medical experts, their function is to gather and to weigh evidence, not to make diagnoses.")  Further, there is evidence from Plaintiff's testimony that her current medication, Tegretol, did not control her seizures as well as the previous medication. Tr. 296, 301.  Plaintiff's treating physician, Dr. Han, stated that Plaintiff is allergic to almost all seizure mediation.  Tr. 189. Plaintiff has at times had therapeutic levels of Tegretol.  Tr. 221,

7

222.

13.     The ALJ also erred in not addressing the inconsistencies in the record whether Plaintiff was driving or had stopped driving. In the decision, the ALJ states that "the claimant still operates a car...[which] is a clear self assessment that the risk of a seizure occurring is minimal." Tr. 21. Plaintiff had been advised not to drive until she had not had a seizure for one year. Tr. 241. At the hearing she testified that she had stopped driving. Tr. 269. The record further shows that her boyfriend usually drives her and she does not drive by herself. Tr. 148, 154. The ALJ did not explain why he did not believe the Plaintiff. A credibility finding must be "'closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995), quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).

14.     On remand, the Commissioner must also consider that James v. Chater, 96 F.3d 1341, (10th Cir. 1996) has been overruled by Sims v. Apfel, 120 S. Ct. 2080 (2000). Plaintiffs no longer are required to exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.

**Recommended Disposition**

For these reasons, I recommend that Plaintiff's Motion to Remand be granted for proceedings consistent with this opinion.

Don J. Svet
**United States Magistrate Judge**